CV 12-5779

SLR:LDM:BDM
F.#2012V01770

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

    Plaintiff,

- against -

FIVE HUNDRED NINETY NINE
THOUSAND EIGHT HUNDRED TEN
DOLLARS AND NO CENTS
($599,810.00), MORE OR LESS,
IN UNITED STATES CURRENCY,
AND ALL PROCEEDS TRACEABLE
THERETO,

    Defendant In Rem.

- - - - - - - - - - - - - - - - -X

NO SUMMONS ISSUED

VERIFIED COMPLAINT
IN REM

Civil Action No.

GLASSER, J.

    Plaintiff, UNITED STATES OF AMERICA, by its attorney, LORETTA E. LYNCH, United States Attorney for the Eastern District of New York, Margaret Kolbe, Assistant United States Attorney, of counsel, alleges upon information and belief as follows:

**PRELIMINARY STATEMENT**

    1.    Plaintiff brings this action in rem in order to condemn and to forfeit to the use and benefit of the United States of America the above-captioned defendant in rem, five hundred ninety nine thousand eight hundred ten dollars and no cents ($599,810.00), more or less, in United States currency (the "Defendant Funds"), which was seized from Jorge Albert PEREZ, ("Perez") and Mariano DeJesus RIVERA ("Rivera"), on or about May 2, 2012, at John F. Kennedy International Airport ("JFK").

2. The Defendant Funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), which provides that all moneys or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, Subchapter I, of the United States Code, or proceeds traceable to such an exchange, or money used or intended to be used to facilitate a controlled substance violation, are subject to forfeiture to the United States.

### JURISDICTION AND VENUE

3. This court has jurisdiction over this action, pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Venue is proper pursuant to 28 U.S.C. §§ 1355 and 1395 in that the acts and omissions giving rise to the forfeiture occurred in the Eastern District of New York and the Defendant Funds were seized in the Eastern District of New York.

### STATUTORY BACKGROUND

5. Pursuant to 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, Subchapter I of the United States Code, or proceeds traceable to such an exchange, or money used or intended to be used to facilitate a controlled substance offense are subject to forfeiture to the United States.

## **FACTS**

6. On Wednesday, May 2, 2012, at approximately 10:30 a.m., agents of the Drug Enforcement Administration ("DEA") JFK Airport Office, Group D-36 ("JFKAO") received information from the Port Authority of New York and New Jersey ("PANYNJ") that two individuals were attempting to transport a large amount of cash through American Airlines terminal 8. Members of the JFKAO responded to American Airlines terminal 8 and discovered that Perez and Rivera were attempting to transport a large amount of cash through the Transportation Security Administration (TSA) checkpoint at terminal 8.

7. On that day, Perez, an employee of American Airlines ("AA"), was wearing his AA uniform, even though it was his day off, and attempted to use his position as an airline employee to escape detection by the TSA. Perez, as an AA employee, previously had a reservation to travel to the Dominican Republic; however, on or about 9:00 a.m. on that same day, he changed his reservation to a Puerto Rican, and therefore domestic, flight. Perez and Rivera each were carrying the bulk currency in their carry-on bags.

8. The currency was found in 24 white envelopes, distributed among Perez and Rivera's carry-on bags, labeled with

the following in bold type on the front of the letter-sized envelopes:

**PRIORITY**
**AA.COM**
**RSVP CLIENT INVITATIONS**
**05/19/12**
**DOM. REP.**
**MARKETING AND PROMOTION**

9. The DEA agents approached Perez and Rivera at the TSA checkpoint and asked them if they would be willing to answer some questions, to which they agreed. The DEA agents asked Perez if he was traveling alone, and Perez said that he was with his friend Rivera, but that they were traveling to different destinations. Each said that Perez was traveling to San Juan, Puerto Rico, and that Rivera was traveling to Santo Domingo, Dominican Republic.

10. Perez told the DEA agents that he was transporting $132,000.00. Perez and Rivera stated that the U.S. Currency was from promoting concerts by way of their company called "Stars Creations." Perez and Rivera stated that Stars Creations does not have a bank account and that most of its business transactions are conducted in cash.

11. Perez stated that he was traveling to Puerto Rico until Monday, November 7, 2012 when he would return to New York. Perez also told the DEA agents that Rivera was his business partner

and that Perez was transporting the currency to Puerto Rico for a "Reggaeton" show. Rivera stated that only he was traveling to the Dominican Republic, and that Perez was traveling to Puerto Rico with all of the currency. Rivera stated that he was helping Perez get the currency through TSA and that he intended to hand the currency over to Perez to take to Puerto Rico.

12. Rivera told the DEA agents that he believed the currency totaled $180,000.00. Perez also admitted to the DEA agents that he was wearing his American Airlines uniform because it would assist in getting the currency through TSA. Perez also admitted that the currency was in envelopes labeled "priority AA.com RSVP Client Invitations 05/19/12 Dom. Rep. marketing and promotion" because, if discovered, it would appear to the TSA that the envelopes belonged to American Airlines and would thereby discourage TSA from opening the envelopes.

13. Rivera told the DEA agents that he was traveling to Santo Domingo for a meeting, but could not provide a name or telephone number to verify the meeting. Both Perez and Rivera gave inconsistent statements as to the amount of currency that they were transporting. Perez first told the PANYNJ that he was in possession of $14,000 and then told members of the JFKAO that he was transporting approximately $130,000. Rivera stated that they were in possession of approximately $180,000.

14. Perez and Rivera were unable to provide any

5

documentation for the origin of the currency that was being transported. Perez and Rivera were unable to provide the telephone number of anyone who knew they were traveling or that could verify that they were transporting the currency.

15. K-9 dog Sammy alerted positive for the odor of narcotics on the Defendant Funds, which totaled approximately $599,810.00. The currency was in the following denominations:

    a.    56 x $5.00 bills.

    b.    2,439 x $10.00 bills.

    c.    28,757 x $20.00 bills.

16. Drug dealers largely conduct their transactions in cash, using mostly $20.00 bills. The large number of $20.00 bills is consistent with the movement of street-level narcotics proceeds to higher-level drug suppliers.

17. Notably, the Defendant Funds were being transported in envelopes marked "Dom. Rep.," evidencing an intention for the Dominican Republic to be the destination for the proceeds, and "Priority AA.Com," evidencing an intention to evade detection by the TSA.

18. Of further note is that the proceeds were purposely being transported from New York, a source city for narcotics proceeds, to Santo Domingo, Dominican Republic, and San Juan, Puerto Rico, both of which are source cities for narcotics.

19. An investigation of Perez's cellular telephone

6

number revealed that there had been at least 10 contacts between Perez's cellular telephone and the telephone numbers of targets of narcotics investigations conducted by DEA and/or the Department of Homeland Security.

20.  On or about June 14, 2012, the DEA sent a notice of the seizure to Perez and Rivera.  On or about June 26, 2012, Perez and Rivera, by their attorney, filed a claim asserting an ownership interest in the Defendant Funds.

## FIRST CLAIM FOR RELIEF

21.  Plaintiff repeats the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

22.  The Defendant Funds constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the CSA, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate a violation of the CSA.

23.  As a result of the foregoing, the Defendant Funds are liable to condemnation and forfeiture to the United States, in accordance with 21 U.S.C. § 881(a)(6).

**WHEREFORE**, plaintiff, United States of America, requests that a warrant of this Court be issued for the arrest of the Defendant Funds; that due notice of these proceedings be given to all interested persons; that the Defendant Funds be forfeited and

condemned to the use of the United States of America; that the plaintiff be awarded its costs and disbursements in this action; and for other relief and further relief as this Court deems just and proper.

Dated:    Brooklyn, New York
           November 21, 2012

                          LORETTA E. LYNCH
                          UNITED STATES ATTORNEY
                          Eastern District of New York
                          Attorney for Plaintiff
                          271 Cadman Plaza East
                          Brooklyn, New York 11201

By:    _____
        Margaret M. Kolbe
        Assistant United States Attorney
        (718) 254-6039
        margaret.kolbe2@usdoj.gov

8

## VERIFICATION

Manuel Rego hereby declares as follows:

1. I am a Special Agent with the U.S. Drug Enforcement Administration.

2. I have read the within-verified complaint in rem and know the contents thereof.

3. I believe the matters contained in the within-verified complaint in rem are true and accurate to the best of my knowledge, information and belief.

4. The source of my information and the grounds for my belief are personal knowledge and information provided by other law enforcement officers and the official files and records of the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Brooklyn, New York
November 21, 2012

_____
Manuel Rego
Special Agent
U.S. Drug Enforcement Administration

9